United States v. Balouchzehi 237609. Good morning Mr. Greenwald. Good morning Mr. Love. May it please the court. Good morning your honors. My name is Cole Love. I'm with Quinn Emanuel or Carton Sullivan. We are CJA counsel for appellant Malik Mohammed Balouchzehi in this matter as we were in the trial court below. The Supreme Court has been clear that the confrontation clause cannot be read narrowly as to make the right easily erasable. That is what the government asks this court to do here. The Celebrate Extraction report that the government offered in the trial court was created for and used at trial against Mr. Balouchzehi and the analyst that created that report was not called at trial. That is a textbook violation of the confrontation clause. What is it that the analyst did? Your honor the record? Beyond essentially being a machine, taking what was on the phone, downloading it, there was virtually maybe there were a couple of small things that were judgment calls but not in any relevant way it seems to me. So what is it that that analyst did and is it right, is it the right frame to ask whether a machine could have done the same thing? So what is it that is testable in your view? Well your honor the record is not clear that this is machine produced data. The government did not lay foundation for that and Mr. Santos who testified to the Celebrate report actually clarified that the analyst does have to make selections, that there are proper processes to follow and so by submitting this report the analyst was certifying that the information on this report was true and accurate, that the processes on that report were followed and that the information that was extracted from the phone was extracted from the phone that was that he extracted. It's testimonial because it asserts that the data on that report was pulled from the phone that the analyst plugged into the computer. So let me go back to the original question. If this had been just a machine, just an AI software that could take the whatever's on the phone and then just spit out a report, would that be, what would that be? Would that be just machine raw data? Your honor that would be raw data but the analyst would have still had to follow processes and asserting that those processes. Well the AI presumably and I'm just using that as an example because I can see the next argument. Presumably the software also is following a process, an algorithmic process. So what is it that's different here? Your honor it's that the analyst had to make certain selections. They had to follow processes that were correct processes for the make and model of the phone. Mr. Santos was very clear about that. That certain selections had to be made. The analyst was actually inputting information in order for this report to be made. What was the information? The record is unclear about that. Only that selections had to be made and certain processes for the certain make and model of the phone had to be followed. What if someone just had to push a button? He'd still have to testify I pushed that button, wouldn't he? Is that the point? Yes your honor. That the button was pushed and that the phone that was plugged in was the phone received from Mr. Santos. But that's an authentication issue, right? That it was the right phone is a question of authentication and that could be proven by circumstantial evidence and it seems to me was in this case. So that's a different issue than the one about what has to be done to extract the data. Your honor it's both an authentication issue and a confrontation clause issue. In Bull Cumming, the Supreme Court held that. Does that mean that we're back to the days when every step in the chain of custody has to be proven by a live witness? No your honor. Why not? But the analyst that actually did that. Why not? You said no. Why not? Case law in this circuit does not say that every chain link in the chain of custody has to be proven. Well I'm not sure the case law in this circuit supports your current position either. You're arguing for something based on Supreme Court principles of the confrontation clause. So I'm wondering why if authentication, let me put it another way. Would the analyst here be an expert witness or a fact witness or does it make any difference? It would be a fact witness your honor. So there's not a question of expertise that is in question here. It's just a question of what did the person do? Correct your honor. So why doesn't that apply to every step in the chain of custody? Because somebody, it's always a question, right? Is this the same heroine? Is this the same gun? Is this the same photograph, whatever, that was seized during the search? And it's passed through the hands of fingerprint examiners and laboratories and different agents and prosecutors until it reaches the courtroom. And someone is testifying that I know this is the thing that I seized because it's got my initials on it. Or someone is testifying that yeah that is a photograph that looks just like the photograph that I seized or something like that. Skipping the steps of all the people who are saying I touched it, I had it in my possession for this length of time, I didn't alter it, I passed it on to the next guy. Why are those witnesses not people that you would be entitled to cross examine under the confrontation clause because what they did is potentially an issue? Because your honor, they did not actually create the report or do any processes to create a report that's being offered at trial. Here, this analyst actually created something that the government offered at trial. And so the analyst has to testify as to how they created that document. Mr. Santos, who took the stand to testify to that document, couldn't say why information was missing from that Celebrite report because he didn't actually create it. The only person who could have told us why information was missing from that report was the analyst who created it. And that's exactly the concern in Bullcoming. What is it that you would have asked? Your honor, why information was missing from the report, why there was no IMEI number on the report, why there was no analyst's name, why the registered owner of the phone was not printed out on that report, which could have linked that phone to Mr. Belucci. So I go back to Judge Lynch's question. Why are those questions questions relating to authentication? They're both related to authentication and reliability, your honor. And in the confrontation clause, the heart of the confrontation clause goes to reliability of the evidence. And so here, where the reliability of the evidence is in question, that analyst would have been the only way for Mr. Belucci to test the reliability of that report. There's no question that the phone that was used was his phone, right? Well, your honor, there is, because the analyst did not testify as to what phone he received. Usually in these cases, the government uses an IMEI number, a unique IMEI number. Well, here we are again back with the issue of authentication, which is the government's argument on authentication, which is something that I have seen in case after case, not even usually rising to the level of the Court of Appeals, because it's always been accepted, that you can tell it's the right phone because it had the right videos on it. The ones that were displayed on, actually on videotape, as I understand it, right? When the defendant was showing these videos to the undercover and the confidential informant, right? Your honor, Agent Conn... So you think this is really not the right phone? Your honor, Agent Conn and Mr. Kandari never looked at the Celebrate report and said, these are the images and videos that I saw on the phone. There was no actual link. But they could be cross-examined about that, if you, if counsel at trial cared to, right? Sure, but the issue is that it's the government's burden to prove authentication. And where they haven't made that connection, they haven't proved authentication. The phone... There's a concept that's used that's kind of lurking in the background through this colloquy. It's called harmless error. Why wasn't this... What do you have to say about that? I'm sorry, could you repeat that? Harmless error. Harmless error. Oh, harmless error. I apologize, your honor. I see that my time has expired. May I answer your question? Yeah, sure. So this is not harmless error because the Celebrate report itself was unique evidence linking those photos and videos to Mr. Balochsehi. As your honor just elicited, the testimony of Agent Kahn was that there were certain photos and videos on Mr. Balochsehi's phone, and this report gave credence to that. It gave Mr. Kahn credibility. And this court in Cummings said that this court must be sure that that erroneous evidence did not influence the jury. So it's really cross-corroboration. The, as I understand it, the agent corroborated the record, and the record corroborated the agent. Is that fair to say? In a way, your honor, yes. But this report was the only unique connection between those photos and videos of narcotics and Mr. Balochsehi. But the government also called Kahn and Kandari, and charitably called Mr. Kahn and Mr. Balochsehi, and Mr. Kandari charitably stated their testimony wasn't helpful to your client. I'm sorry, could you repeat that? The government had cooperated as testimony in this case. So I'm trying to understand your theory about assuming hypothetically that there was a confrontation issue, confrontation clause issue here. Why wasn't it harmless? It wasn't harmless because this was unique evidence that could have influenced the jury. And this court cannot be sure that it did not. I understand what that means. It was unique evidence. It was the only evidence. Kahn and Kandari testified that your client was a major drug dealer and went through in some detail drug transactions, shipments, how the organization worked, and so forth. And some of what they testified to was corroborated, if that's the right word, by tape recordings that they had made of your client speaking to them. Yes, your honor, but the report was still a unique link between those... It was one part of what Judge Furman called the most overwhelming evidence of guilt he had ever seen in his years as a prosecutor and judge. Yes, your honor, but it was still unique evidence. Nothing else... Oh, you got three judges. We're unanimous. Everything, every bit of evidence is unique. So the question is everything else. So if you set aside this, what you describe as unique evidence, there is a lot of other evidence, arguably overwhelming evidence of your client's guilt. Are we wrong or are we right about that? I won't take a position as to that, but I will say that it matters not what evidence is left over after the erroneous evidence is taken out. That is not the test that this court has... I'm sorry, say that again. This court doesn't test harmless error by taking out the erroneous evidence and seeing if there is still sufficient evidence to convict. Not if there is still sufficient evidence. Suppose the government had a confession. Right, your honor, it is one factor, but the ultimate question is whether this evidence influenced the jury or could have influenced the jury. So you've reserved, I think, some time for rebuttal, Mr. Roof. Very helpful. Let's hear from the government. Good morning. Good morning. May it please the court, I'm Kaylin Lasky. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal and I represented the United States at trial. I'd like to pick up quickly where we had just left off with respect to the Confrontation Clause. Here, plain error standard applies because the defendant did not put the court on notice about Confrontation Clause concerns. And because of that, one of the ways, or the defendant cannot satisfy plain error because any error did not affect substantial rights here, which is generally... What do you say? Was this analyst, was this issue of an analyst lurking out there, was that raised? In other words, during the voir dire of Santos, or immediately thereafter, was that issue raised? That there was an analyst who did all this work and Mr. Santos, when asked about what the analyst did at the Special Operations Division, couldn't answer the questions? All of the objections that were made below were made with respect to foundation, were made with respect to authenticity at every single juncture. That is what defendant raised. Suppose the defendant said objection hearsay. Would that be sufficient to raise a Confrontation Clause issue? Your Honor, that may be getting closer to the line, but that is not what we have here. Based on the record... It's similar when the issue is, we can't tell that this is authentic because we haven't got this guy here. But simply, that was not the objection. That was not the objection. No, it was about foundation, and it was about authenticity. Well, it's about this gentleman can't testify to the foundation, because there's this other guy who's the guy who should be testifying to the foundation. Isn't that the objection that was made? It was not explicitly laid out that way, Your Honor. Does it have to be explicit? I mean, we're talking about the Confrontation. We're talking about a constitutional right. Does that have to be explicit? And Mr. Love made a couple of different statements about burden. I don't know whose burden it is. It might be the defendant's burden to raise certain issues in order to trigger the Confrontation Clause. But here, Mr. Lynch has suggested, the questions all seem to go to, there's someone, an analyst out there who I'm not, who we've not heard from, who we need to hear from. Why can't we view that on appeal as a Confrontation Clause objection at some level? Because the person, does the defense counsel have to say, Your Honor, I'm making a Confrontation Clause objection? No, Your Honor. You're not making that argument, are you? No, I'm not, Your Honor. But it was not even framed in the way that Your Honor has just raised. It was repeatedly stated as foundation, authenticity, issues with the extraction itself. It was not about confrontation, confronting witnesses. There was never a discussion about calling that witness, for example. So assume, for the purpose of this argument, that the objection, the constitutional objection was preserved. Yes. So if we were to presume that, the defendant still fails to meet the harmless error test, based on the overwhelming, in this case, some of the evidence... Remind me of what you offered, of this evidence, ostensibly proved. What did the evidence include? No, why did you, I don't see why you didn't create this problem, but what were you, what was the point of this evidence? The point of the phone evidence, in terms of in connection with the trial itself? Yes. Okay. The phone evidence, frankly, was a second tier amount of evidence in this case. What were you doing? Why did you need it? Why did we need it? Why did you introduce it? For what purpose? The evidence went to show that, to corroborate evidence that other evidence at trial, including the video recordings, including the audio recordings, corroborated some of the defendant's statements regarding the fishing business, for example, that he explained would be used to conceal the drug trafficking business that he would do in this case. So it was corroborative. I don't understand what you just said, so could you help me? Sure. So the evidence, putting aside, for example, the selfies and the passport and the identifying evidence. And the cooperating witnesses testimony. Right. And all the other evidence. So what were you doing with this, this summary you extracted from the phone? We were using it to corroborate other evidence in the case, Your Honor. And we believe that the way it was done was permissible here, putting it in through Mr. Santos for the reasons that we've described in our brief. The evidence, again, while it was it was helpful, we believe to the jury and explaining some of the evidence that was presented otherwise at trial, including the the audio recordings. You know, I've looked at the briefs and spent some time with this case. I had a hard time figuring out exactly what you people were doing. Why were you introducing this in light of the rest of your case? And Your Honor, I would agree that the evidence was overwhelming. One more shovel full of dirt as you're burying the defendant under evidence. This is just one more additional item of corroboration. Is that what you're saying? You look forward to a tough time from us? You what? You look forward to creating clear sentences. I always look forward to that, Your Honor. Might I suggest the question, what are you going to do next time? And I'm not suggesting that you refrain from offering every last shovel full of dirt that you want to bury the defendant with because you never know who might find a reasonable doubt based on what. But I am suggesting that maybe it's a good idea to call the actual person who created the report. You know, we're learning every term from the Supreme Court, something new about what witnesses you need to call. And maybe it's a good idea to get out front of that process or at least in the light of Smith against Arizona to play the hand a little differently next time. Your Honor, I don't see a reason here to impugn what the District Court did here. I'm not impugning anything. I'm suggesting that it might be smart for you people, you, not the judge, you, the prosecutors, to call live witnesses or get a stipulation about things rather than stretching any limits and creating unnecessary appellate issues. That's what I'm suggesting. I hope that message goes back to your office. Point taken, Your Honor. Okay. Maybe you were thinking that, you know, since our evidence of guilt of what may seem to be a pretty substantial drug dealer, the quantity of other evidence obviated the need to call the guy who made this charge. Your Honor, it was a decision made based on the trial and based on logistical strategic decisions needed at the time. May I ask you a question? So set aside, because I'm very interested in this question because it has implications, it seems to me, going forward. Set aside the harmless error or plain error analysis. Defend the admission of this extraction report, 567 and 567A, as a matter of the competition clause challenge. Defend it on the merits. Yes, Your Honor. And the merits here, we believe, are strong. There was nothing in the report consisted of testimonial statements. This was raw, machine-created data. This was the extraction of a phone in printed, readable form. Mr. Love, as far as my understanding of Mr. Love, says actually there are some judgment calls here that are made by the SOD DA analyst. Is he right or is he wrong about that? And if he's wrong about that, where do I look to determine that he's wrong about it? So I would refer, Your Honor, to the Fifth Circuit decision in U.S.V. Hill, which we've cited in our brief, where they found that a phone extraction is using Cellebrite? It does not state whether it's Cellebrite. But the way in which it's described, describes it as a phone extraction. It is either that program or a different, similar program. Exactly, Your Honor. Of course, the Fifth Circuit didn't have the benefit of Smith v. Arizona when it decided that case. Is the distinction that you're propounding in Smith, that in Smith, the chemist who testified to his expert opinion that this was narcotics, essentially testified that another chemist who did the tests also concluded that it was, whatever narcotic was at issue in the case. Is that the difference that there's no expert is testifying on the stand that a different expert, to a different expert's opinion? That's correct, Your Honor. And in addition, there were actual statements in that underlying opinion in Smith v. Arizona that did not exist here. That what was being put into evidence was a report that says this is cocaine or heroin or whatever it was. Correct, Your Honor. But isn't that a rather slim distinction in that somebody is saying that the very existence of this report says somebody made this report and made this report by doing certain things, by pushing certain buttons on the machine, hitting certain keys on the keyboard to input certain requests, even if it was an AI that generates the report of some sort. Some human being is querying the AI and it matters what the query was. Isn't that really the problem here that this report inherently says on its face, we are the data that came off this guy's phone. And who is, whose credibility stands behind that statement? So, Your Honor, I think this gets to a question that was previously raised, which is the nature of the extraction and of the process itself, which is far more rote than these other sorts of analyses. It is an interesting question, though. I take it in Smith, the chemist also does certain things, right? Puts a test, takes a test tube, puts the purported heroin in. I don't know how they actually do it. Splashes some other kind of chemical in, it turns green. The expert then says, oh, it turned green. That means it's heroin and writes a report saying it's heroin. And that comes in at the trial. That is testimony by that absent person. You're saying that if we had a machine that you just took the purported heroin and poured it into the machine and out comes a slip of paper that says heroin, that would be admissible because it is not the subjective opinion of the expert? Is that the distinction that we're drawing here? I would want to give it more thought in the context of this particular hypothetical, but I do think that the nature of the extraction here is far different than the other sorts of cases that are cited by the defendant where we're talking about observations about crime scene evidence, about autopsy reports. This is not a solemn declaration. This is not a declaration by an absent expert that in my opinion this is the data that was on the phone. You're saying we can be confident somehow in the absence of anyone saying that this is the data that was on the phone. I think based on the type of testing or the type of extraction process here, yes, Your Honor. And that is based on Santos' testimony? Yes. Santos testified this is how one does this thing. This is how one uses this program. This is how I've used the program over many, many years. Here's how it works. Here are the buttons you press and this is how you get the data. Unless there are further questions, I'm happy to rest on the government's submission. Thank you. May I proceed? Of course. I think Your Honor Lynch hit it the nail on the head. We don't know who this analyst is. This analyst isn't here. No one's here to attest to the reliability of this document. And that goes directly against the confrontation clause. But what about the what we just heard? Mr. Santos, who I guess that is another interesting question, is he now testifying as an expert, is saying, I know how you do this. Here's how this is done. You take the phone, you set it into some device that's connected to a computer, and then you type in, execute, celebrate. And then this is what comes out of the machine. That's not exactly what Mr. Santos testified about. Is that what Mr. Santos testified about? He testified about how do I extract it from the general report, the 800-page report. Mr. Santos testified to how celebrate works when he's used it in the past. He testified that when creating an extraction, you have to make certain selections. And that depends on the make and model of the phone. There are different software tools. There are different processes. So it's not as simple as the government is making it out to be. So I'm still not, you know, yeah, I guess, right? I mean, what you're saying then is that no matter how simple the program is, no matter how mechanical the process is, some human being has to activate it. Correct. Because, you know, to say you have to, you get a choice at the beginning, Samsung or iPhone, and you push the button for one. You're not suggesting that the problem is maybe all this data was created out of thin air because somebody might have pushed the iPhone button when she should have pushed the Samsung button? I mean, you know, there are, it depends, I guess, on what level of choice we're talking about, what has to be done. Correct. Somebody always has to do something. Agreed, Your Honor. So you're suggesting that every time something like this happens, no matter how mechanical, no matter how mechanical the process is, the fact that a human being activates it means that the human being who activated the program has to testify live. Yes, Your Honor. So, you know, I thought you would provide a more nuanced answer. So every human judgment in connection with any report that's admitted is relevant as a matter of the Confrontation Clause. That is your position. Every human agency or judgment. Where the Confrontation Clause is purposed at reliability of the evidence, yes. Is it your position that every human judgment is relevant in the context of a Confrontation Clause challenge? So I get a report and anything that I do is relevant as a matter of the Confrontation Clause. Anything that a person does to create a report, yes. And I believe that's what bullcumming stands for, is that saying that you've done certain tests and got certain results is testimonial. So when the Supreme Court refers to raw machine driven data, what does that mean? Because obviously some human, I think, has got to do something to put in data into a machine. So what does that mean? What does that refer to as a matter of the Confrontation Claim? Well, the Supreme Court has never held that raw machine produced data is not subject to the Confrontation Clause. The executive circuit, as my colleague from the government suggested, did find that. But as your Honor pointed out, that was not a celebrate extraction. Thank you very much. I appreciate very much that you're also CJA counsel. And there are two former chairs of the CJA committee on this battle. Thank you for that. And we thank the government. We'll reserve the decision.